UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| GREGORY D. JONES, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-44-DGW |
| ) | |
| SEAN GARDNER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**Wilkerson, Magistrate Judge:**

Plaintiff Gregory D. Jones, an inmate in the Pontiac Correctional center, brings this action pursuant to 42 U.S.C. §1983 against Defendant Officer Sean Gardner for deprivation of Plaintiff's constitutional rights.  Plaintiff seeks damages and injunctive relief for being denied adequate medical care in violation of his Eighth Amendment Rights.  Now before the Court is Defendant's Motion for Summary Judgment (Doc. 23) and Plaintiff's Opposition (Doc. 30).  For the reasons set forth below, Defendant's Motion is **DENIED**.

### BACKGROUND

In August of 1999, Plaintiff Gregory D. Jones ("Jones") was admitted to the custody of the Illinois Department of Corrections and sent to the Menard Correctional Center ("MCC"), where he resided until his December 2006 transfer to the Pontiac Correctional Center (Doc. 24-2).  At all times relevant to the instant action, Jones was an inmate at MCC and Defendant Officer Sean Gardner ("Gardner") was an MCC corrections officer (Doc. 24).

While at MCC, Jones received medical treatment for bone calluses, which, if left untreated, caused Jones significant pain and difficulty walking (Doc. 5).  Jones alleges that on

September 6, 2006, and again on September 9, 2006, Defendant Gardner denied him access to adequate medical care concerning a "progressively pronounced limp" as a result of these calluses (Doc. 1). Jones contends that Gardner denied him access to medical care despite the fact that doctors had made "several attempts to comply [with his] requests [for] needed medical care" and despite the fact that Jones possessed "call passes" for medical appointments (Doc. 1).

Jones claims that he filed four separate grievances on September 20, 21, 24, and 28 of 2006 pertaining to Gardner's conduct, but that he never received responses (Doc. 30-1). On October 22, 2006, Jones mailed a letter to the Administrative Review Board ("ARB"), which the ARB received on October 31, in which Jones again alleged that Gardner was denying him access to medical treatment at MCC (Doc. 24-1). On November 1, 2006, the ARB responded to the letter and advised Jones that his complaint was not of the type which allowed for direct appeal to the ARB and that he had to contact his correctional counselor regarding the issue (Doc. 24-1). After receiving this letter, Jones filed additional grievances on November 16 and again on November 22 in which he complained that the previous grievances allegedly filed in September pertaining to Officer Gardner's conduct were not responded to (Doc. 30-1). Then, on November 25, 2006, Jones sent a letter to the ARB. In it, he referenced the fact that his grievances filed in late-September relating to Gardner's conduct were not responded to, and further complained that his grievance submitted on November 16 was returned with the response that it "was not filed within the time frame" (Doc. 30-1).

On January 28, 2010, the Court held a hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). At the hearing, Gardner argued that Jones failed to exhaust his administrative remedies because the records of the Administrative Review Board, along with Jones's master file, showed that he never filed a grievance with the ARB regarding Gardner's

2

conduct. Gardner, however, conceded that, if the counselor did not respond to Jones' grievances, then there would not be a copy in Jones' master file (Doc. 41).

Jones tracked his efforts to obtain a response to the grievances, referencing the various letters he submitted to the ARB, and contended that his grievance counselor stated that oftentimes she would not follow up with inmates' grievances. Jones further stated that he retained copies of the grievances in the event that he received no response, but conceded that, aside from the copies that he retained, there would be no way to corroborate the fact that they were in fact submitted (Doc. 41).

Gardner then pointed to Jones's deposition testimony wherein Jones testified that he never received responses to any grievances filed in 2006 or 2007, despite the fact that his records show that he received formal responses to eleven grievances in 2006 alone. Jones, however, characterized this attack on his credibility as misleading, stating that his response in the deposition was not that he did not receive responses to *all* grievances filed in 2006, but that he did not receive responses to grievances regarding Gardner's conduct. In response, Gardner pointed directly to the deposition transcript, which indicated that Jones understood that he was referring to all grievances filed in 2006 or 2007, not just grievances pertaining to Officer Gardner (Doc. 41).

Jones also contended that the grievances to which he did receive responses were of less important issues, adding that the grievances involving more serious allegations—such as an incident involving an allegation that one officer attempted to suborn perjury from another officer—were not responded to because they carried more severe penalties.

Toward the end of the hearing, Jones made final attempts to bolster his credibility. He argued that, if in fact he never filed any grievance then there would be no reason to go through

the trouble of submitting a letter to the ARB and then filing a grievance if he could have merely filed a grievance in the first place. Gardner, however, took issue with this argument, stating that the submission of letters to the ARB is not, by itself, sufficient proof that Jones filed grievances in the first place.

## STANDARD

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendant is] entitled to judgment as a matter of law. *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). The Court must construe all facts in the light most favorable to Jones, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).

The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. 20 Ill. Admin. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. 20 Ill. Admin. Code § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. 20 Ill. Admin. Code § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that a substantial risk of imminent person injury or other serious or irreparable harm exists, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. 20 Ill. Admin. Code §504.840. Inmates may file grievances directly with the ARB on issues that pertain to a facility other than the facility where the offender is currently assigned. 20 Ill. Admin. Code §514.870(a)(4).

*Availability of Administrative Remedies*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *see also Muhammad v. McAdory*, 214 Fed. Appx. 610, 613 (7th Cir. 2007) ("[P]rison administrators may not frustrate an inmate's efforts to comply with the administrative review process by imposing hurdles that are not part of the established grievance

5

procedure."); *Brengettcy v. Horton,* 423 F.3d 674, 678, 682 (7th Cir. 2005) (holding that prison officials were not entitled to summary judgment on exhaustion claim because the prisoner filed several unanswered grievances, was told that sometimes the grievances got torn up, and regulations did not instruct him on how to proceed when grievances remained unanswered"). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id; see also Towns v. Holton*, 346 Fed. Appx. 97, 100 (7th Cir. 2009)(district court erred in dismissing the case based upon "defendants' misguided premise that Towns did not exhaust because he did not appeal rulings that he never received").

### *Gardner's Claim*

In this case, the issue of exhaustion hinges on the credibility of the Plaintiff. To find that Jones exhausted his administrative remedies would require the Court to find that Jones did, in fact, submit grievances and never received responses, despite Gardner's assertions to the contrary.

Gardner contends that Jones has failed to exhaust his administrative remedies before he filed this lawsuit because Jones did not properly file grievances with his grievance officer or properly appeal a decision of the Chief Administrative Officer regarding the same (Doc. 24). In support thereof, Gardner submitted an affidavit, which states that Jones' master file does not show that he ever appealed a decision of the CAO regarding Gardner's denial of access to medical care (Doc. 24-1).

In his Opposition, Jones claims that he exhausted his administrative remedies because he utilized every avenue available to him. He claims that he never received a response to his

6

grievances relating to Gardner's conduct, and in support thereof, Jones has submitted his own copies of the four grievances that he claims were filed in late September and early October (Doc. 30-1). According to Jones, by failing to respond to these grievances, MCC officials effectively made the normal review process unavailable (Doc. 30-1). Gardner, in response to Jones' contention that he filed such grievances, argues that Jones is not credible (Doc. 24, 41). Gardner attacks Jones' credibility based on the fact that Jones' master file contradicts his deposition testimony that he never received a response to a grievance in 2006 (Doc. 24, 41). According to the master file, Jones received responses to eleven grievances filed in 2006 for matters unrelated to the instant suit (Doc. 24).

It is clear that Jones could not appeal grievances to which he received no response, nor was he required to do so. *See Towns,* 346 Fed. Appx. 97, 100. Jones was only required to exhaust available remedies, and if MCC officials failed to respond to his grievances, they effectively made [the] grievance process unavailable. The Court finds Jones's version of events to be credible. Jones has submitted documentary evidence indicating that he filed four separate grievances pertaining to Officer Garner's conduct (Doc. 30-1). Defendant Gardner claims that the grievances were never submitted because they were not in Jones' master file, but he concedes that the grievances would not be in the master file if MCC officials never issued a response (Doc. 41).

Moreover, it is important to note Jones knew that he needed to contact the ARB within 60 days of the incident. Given that the two incidents occurred on September 6th and 9th of 2006, Jones had until November 6th and 9th, respectively, to file formal grievances. Jones was advised by letter dated November 1, 2006 that his complaint was not of the type which allowed for direct appeal to the ARB and that he had to contact his correctional counselor regarding the issue.

7

Thus, between November 1st when the letter was sent and November 5th and 8th, Jones merely could have filed a formal grievance pertaining to the Gardner's conduct that occurred back in September. Instead, subsequent to the November 5th and 8th deadlines, Jones decided to file grievances in which he complained not of Gardner's conduct, but of the failure of MCC officials to respond to previously-filed grievances. It is quite possible that Jones decided to forego the normal grievance procedure because his previous attempts ended without a response.

Based upon the foregoing, the Court finds that Plaintiff has exhausted his administrative remedies. Accordingly, Defendant's Motion for Summary Judgment (Doc. 23) is **DENIED**.

**IT IS SO ORDERED**.

**DATED:  September 30,  2010**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON
United States Magistrate Judge**